IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| vs. | : | |
| REGINALD STEPHENS | : | 10-620-5 |

**MEMORANDUM**

**STENGEL, J.**                                                          **April 23, 2018**

On December 6, 2012 a jury convicted Reginald Stephens of three counts of drug-related charges and two charges arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). On November 14, 2013, Stephens was sentenced to 300 months' imprisonment and five years' supervised release, with a $2,000 fine and a $500 special assessment. The Third Circuit Court of Appeals affirmed Mr. Stephens' conviction and sentence. U.S. v. Stephens, 612 Fed. Appx. 107 (3d Cir. 2015). Defendant filed a timely pro se motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 896.) On April 18, 2016, the government filed a response in opposition (Doc. No. 921) and on May 31, 2016 petitioner filed a reply (Doc. No. 932). For the reasons discussed below, petitioner's motion is denied in its entirety without an evidentiary hearing.

I. **Background**

The pertinent factual background is summarized by the Third Circuit's opinion addressing the appeal of Stephens' co-conspirator, Ramel Moten:

Moten was a leader of a violent gang known as the "Harlem Boys" or "Young Hit

1

Men" that sold narcotics for nine years in the Bartram Village Housing
Development ("Bartram Village") located in Southwest Philadelphia. From about
October 2001 through approximately October 6, 2010, the Harlem Boys controlled
the illegal drug trade in Bartram Village, and, for most of that time, Terrance
Hamm ran the street-level operations of the enterprise, which trafficked in crack
cocaine, marijuana, and prescription drugs. Hamm would obtain bulk quantities of
drugs from various sources of supply, prepare the drugs for sale, and distribute
them himself and through a network of street-level drug dealers. He and his co-
conspirators used their residences and other houses or apartments located in or
near Bartram Village to store, cook, package, and sell crack cocaine, and to store
drug proceeds, firearms, and ammunition.

Around April 2007, after several search warrants were executed in Bartram
Village, Hamm stepped back from his involvement in the organization's criminal
activity. After that, Moten became the leader of the Harlem Boys. Hamm,
however, later resumed his drug trafficking activities and continued to obtain,
supply, and sell crack in and around Bartram Village.

Even before assuming a leadership role, Moten was a supplier and distributor of
illegal narcotics and a gunman for the enterprise. He committed acts of violence
with other members of the enterprise to protect their turf and frequently provided
firearms to his co-conspirators for use in robberies, assaults, and other
crimes. Merrell Hobbs, Reginald Stephens, Bryan Hill, Warren Stokes, Hikeem
Torrence, Omar Roane, Damon Turner, Allen Parker, Tayale Shelton, Shyheem
Davis, and Anthony Freeman, were also distributors of illegal narcotics and
gunmen for the enterprise. Khalil Allen, Andre Tiller, Kareem Pittman, and Carol
Miles were distributors of illegal narcotics. Terrance Hamm's brother Charles was
a supplier of cocaine to the enterprise and a distributor of illegal narcotics; he also
was responsible for the New Jersey drug sales of the enterprise. Kareem Pittman,
Melika Parker, and Roneisha Scott maintained premises used by the enterprise to
manufacture, package, store, and sell drugs, and to store guns.

Members of the enterprise committed, attempted, and threatened to commit acts of
violence, including murder, assault, and robbery, to protect and expand the
enterprise's operations. While some acts of violence occurred prior to April 2007,
the violence intensified in the years following Terrance Hamm's reduced role and
Moten's elevated role in the gang.

U.S v. Moten, 617 Fed. Appx. 186, 188-89 (3d Cir. 2015). Stephens was charged in the

89-count superseding indictment with the following charges: conspiracy to participate in

a racketeering enterprise (count 1) in violation of 18 U.S.C. § 1962(d); conspiracy to

2

distribute 280 grams of cocaine base (crack) and marijuana (count 2) in violation of 21 U.S.C. §§ 841(a)(1)(A), 841(b)(1)(D), and 846; carjacking (count 4) in violation of 18 U.S.C. § 2119; carrying and using a firearm during a violent crime (count 5) in violation of 18 U.S.C. § 924(c); possession with the intent to distribute marijuana (count 13) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and possession with the intent to distribute cocaine base (crack) (counts 19 and 20) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).[1]

## II. Standard of Review

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a).

Section 2255(b) provides the procedure for reviewing the motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact

---

[1] Counts 4 and 5 were dismissed before trial as barred by the statute of limitations.

3

> and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); see also 28 U.S.C. § 2255, R. 8(a). In exercising that discretion, the court must decide whether the prisoner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d. Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)); see also Forte, 865 F.2d at 62.

Mr. Stephens has filed this motion pro se. Pro se pleadings are traditionally construed quite liberally. However, a pro se petitioner is not excused from the duty to prove a "set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

4

## III. Discussion

Petitioner argues that he is entitled to relief under § 2255 based on trial counsel's alleged ineffectiveness. Specifically, petitioner argues that trial counsel incorrectly informed him that he would be classified as a career offender, and that as a result he was facing a mandatory minimum sentence of twenty years, regardless of whether he decided to enter a plea or go to trial. Based on this misinformation, petitioner chose to proceed to trial rather than plead guilty. For the reasons discussed below, I find that petitioner is unable to demonstrate prejudice, and his petition is dismissed without an evidentiary hearing.

The two-part standard of Strickland v. Washington, 466 U.S. 668 (1984), "supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Under the two-part inquiry, "[f]irst, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." Id. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for

5

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Because a § 2255 petitioner cannot prevail unless he satisfies both prongs of the Strickland test, the Third Circuit has recognized that it is often appropriate for a reviewing court to consider the second part of the test, the prejudice to the defendant based on the "assumed deficient conduct of counsel," first. If the petitioner has not shown that he would have been better off if the alleged errors had not been made, it is unnecessary to consider whether his counsel's performance was actually deficient. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993). In Strickland, the Supreme Court advised:

> A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 466 U.S. at 697.

The Sixth Amendment right to effective counsel extends to the plea process. Hill v. Lockhart, 474 U.S. 52, 56-7 (1985); Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). A petitioner has a valid Sixth

Amendment claim where counsel's advice is "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." Day, 969 F.2d at 43. "[T]he Third Circuit has held that 'familiarity with the structure and basic content of the [Sentencing] Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation.'" U.S. v. Cobb, 110 F. Supp. 3d 591, 597 (E.D.Pa. 2015) (citing Day, 969 F.2d at 43).

Petitioner argues that defense counsel improperly advised him that he was classified as a "career offender" and that as a result he was subject to a twenty-year mandatory minimum sentence regardless of whether he pleaded guilty or went to trial. Based on this incorrect information, petitioner states he chose to forgo a favorable plea agreement and instead proceeded to trial. In support of this argument, petitioner cites defense counsel's testimony from his sentencing:

> I'd like to tell you a little quick story, Judge, about the fact that but for a mistaken impression on the part of the government that Reginald Stephens may never have been part of this trial.
>
> When in the early days of the indictment having been returned and working our way towards the case, it was the government's position that Mr. Stephens was a career offender, which was reasonable on their part because I thought he was a career offender, because he had those two AG assault cases in his background. And this case, if a conviction resulted, would make him a career offender.
>
> But, credit Mr. Petrarca with finding out one of his two AG assault cases actually took place after the last of his offenses, Count 20, that offense actually took place after Count 20 had been committed, and so Mr. Petrarca informed all of us that Mr. Stephens was not a career offender.
>
> Judge, when we were deciding upon whether to go to trial or work out a plea, you know, we were being told by the government, look, your guy is a career offender

7

and we start with a 20-year mando. That was wrong. It wasn't deliberate on the part of the government. They weren't trying to mislead us. But they were wrong. If my client knew that he was not a career offender and his mando was just ten years, you know, we may never have had Mr. Stephens as part of this trial.

(Sent. Tr. at P. 45-46.)

It is undisputed that defense counsel incorrectly advised petitioner that he qualified as a "career offender." However, it is also undisputed that petitioner's sentencing guideline range was 360 months to life imprisonment, regardless of whether he pleaded guilty or proceeded to trial. For the reasons discussed below, I find that petitioner fails to demonstrate prejudice under Strickland and his petition is dismissed.

These facts closely parallel those in Cobb, supra, and a brief discussion of the court's analysis is warranted. In that case, the petitioner sought to have his sentence vacated, set aside, or corrected pursuant to U.S.C. § 2255. It was undisputed that defense counsel improperly advised the defendant that he qualified as a career offender. Id. at 597. Specifically, the defendant believed that his guideline range was 360 months to life imprisonment (based on his career offender status), when it was actually only 130 to 162 months if he proceeded to trial and 100 to 125 months if he pleaded guilty. Id. at 598. With respect to the first prong under Strickland, the court concluded that "'petitioner was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming,' and so this fact alone is sufficient to show that counsel's performance was deficient." Id. (citing Day, 969 F.2d at 44).

The court in Cobb then moved onto the prejudice inquiry, which required an initial determination of whether "an individual [can] be prejudiced by the mistaken belief that

8

his sentencing exposure was <u>higher</u> than it was in reality[.]" Id. at 598 (emphasis in original). The answer was yes. Relying in part on the Third Circuit's decision in <u>Day</u>, the court noted,

> [K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. It is the comparative sentence exposure, of course, that makes the difference, and in that sense, it is not dispositive whether a defendant's sentencing exposure is higher or lower than he believes—because either way that belief may cause him to make a decision he would not have made otherwise that ultimately places him in a worse position than the alternative.

<u>Id.</u> (internal citations and quotations omitted). The court noted that where a defendant believes he is facing a minimum of 360 months in prison "even if he pled [sic] guilty and received the benefits of acceptance of responsibility . . . it is not difficult to understand why Petitioner—or another defendant in his situation—might have believed he had little to lose by proceeding to trial." <u>Id.</u> at 598-99.

Having concluded that petitioner could, theoretically, be prejudiced, the court in <u>Cobb</u> then went on to analyze whether petitioner actually suffered prejudice. To establish prejudice, a petitioner must demonstrate that (1) he would have pleaded guilty had he known his true sentence exposure and (2) he would have received a lesser sentence had he pleaded guilty. <u>Id.</u> With respect to the first element, the petitioner stated that he would have "definitely pled [sic] guilty . . . instead of rolling the dice at trial." <u>Id.</u> at 599. Acknowledging that this statement was self-serving, the court nonetheless concluded that it was reasonable and believable under the circumstances. <u>Id.</u>

The court then concluded that there was a reasonable probability that petitioner would have received a lesser sentence had he pleaded guilty reasoning, "[h]ad petitioner

9

pled [sic] guilty without a plea agreement, his sentence range would have been, at worst, 100 to 125 months due to the decrease in offense levels granted for acceptance of responsibility." Id. at 600-01. Even though the court also granted the government's request for an upward variance at sentencing, this did not preclude a finding of prejudice because it remained "reasonably probable that [defendant's] sentence would have been shorter" if he pleaded guilty. Id. at 601 (emphasis in original). "Even if the difference in sentencing would have been very small—a few months, for example—Petitioner would be prejudiced, because 'any amount of actual jail time has Sixth Amendment significance.'" Id. at 600-01 (citing Glover v. United States, 531 U.S. 198, 203 (2001)). Therefore, petitioner demonstrated prejudice under Strickland and was entitled to relief under § 2255.

In this case, it is undisputed that defense counsel initially advised petitioner that he was a career offender based upon his prior record.[2] I find, however, that petitioner is

---

[2] The Government acknowledges that both the Government and defense counsel originally believed petitioner qualified as a career offender. The government disputes that defense counsel was ineffective because counsel later advised petitioner that he faced a ten-year mandatory minimum (not twenty) and that counsel urged petitioner to plead guilty. The government includes three exhibits demonstrating that defense counsel's testimony at sentencing was an "unfortunate misstatement." Exhibit A is a letter from defense counsel to petitioner dated November 3, 2011, where counsel advised petitioner that he was facing two ten-year mandatory minimum sentences that must run consecutively and also informed petitioner of his option to cooperate and enter into a plea deal. Exhibit B is a second letter from defense counsel to petitioner dated March 27, 2012, where counsel advised petitioner that counts four and five were dismissed, and petitioner was now facing a mandatory ten-year sentence. Counsel again asked if petitioner was interested in a plea. Exhibit C is a memorandum to the file prepared by defense counsel stating he "urged [petitioner] to consider an open plea," but that petitioner was "demanding a trial." Based on these documents, the Government argues that defense counsel merely misspoke at sentencing and that petitioner was aware both of his correct true sentencing exposure and about the opportunity to enter into a guilty plea.

10

unable to demonstrate prejudice and his petition is dismissed.

Petitioner states, "[h]ad it not been for counsel directing Petitioner to proceed to trial based on his evidence that there was no benefit in pleading because of a career offender status, Petitioner would not have passed up the opportunity to enter a plea agreement that would have resulted in lowering his sentence." (Doc. No. 896 at 12.) Although the Third Circuit does not require objective evidence that the petitioner would have pleaded guilty, and even though the self-serving statement in Cobb, supra, was sufficient, these facts are distinguishable. It is undisputed that petitioner decided to go to trial because he believed he faced a sentence of 360 months up to life imprisonment regardless of whether he pleaded guilty or went to trial. It is also undisputed that, even if petitioner decided to enter a plea and was afforded a three-point reduction for acceptance of responsibility, his guideline range remained unchanged at 360 months to life

---

In his reply, petitioner includes an additional letter from defense counsel dated September 9, 2013. This letter, which was prepared subsequent to those exhibits discussed above, states that petitioner was facing a ten-year mandatory sentence, and goes on to note as follows:
> [w]hat hurts though is that you are a career offender for sentencing purposes. The combination of two prior crimes of violence and the drug distribution conviction in this case makes you a career offender. The significance of that is that you automatically jump into criminal history category VI. So, at sentencing, we need not be as concerned about the mandatory as we must be about the projected Guideline Sentence.

(Doc. No. 932 at Ex. 1.)

It is well-established that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." Day, 969 F.2d at 43. The court in Day explained, "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." Id. The Day court concluded that if a defendant is "seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming," his counsel was ineffective. Id. at 44. Here, as recently as September 9, 2013, petitioner was incorrectly advised that he was a career offender. Accepting the petitioner's factual allegations as true, I am unable to conclusively determine that trial counsel was not ineffective. However, because I conclusively find that petitioner is unable to demonstrate prejudice, discussed infra, an evidentiary hearing is not warranted and the petition is dismissed.

11

imprisonment. It is unreasonable to conclude that petitioner would have pleaded guilty had he known his true sentencing exposure because his exposure was unchanged. Therefore, petitioner cannot demonstrate that he would have pleaded guilty and not gone to trial but for counsel's alleged ineffective assistance.

For these same reasons, petitioner is also unable to demonstrate that had he pleaded guilty he would have received a lesser sentence. Petitioner's sentencing guideline range was based on an offense level of 40 and a criminal history category of VI. (Pre-Sentencing Report, ¶ 313.) Had petitioner entered into a guilty plea, he is correct that he would have received a three point reduction pursuant to U.S.S.G. § 3E1.1 (a) and (b), and his offense level would have been reduced to 37. However, petitioner's criminal history would have remained at level VI. Importantly, these numbers yield the same sentencing guideline range of 360 months to life imprisonment. It is therefore not possible that petitioner's sentence would have been shorter had he pleaded guilty. Cf. Cobb, 110 F. Supp. at 600-01.

## IV. Conclusion

I find that petitioner's claim is meritless and is dismissed without an evidentiary hearing. No certificate of appealability shall issue in this case because Mr. Stephens has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

An appropriate Order follows.